Joseph WILKINSON, Larry Erdman, Ismael Torres, Juan Maldonado, Alice Wallace, Anthony Chiango, Janice Wholey, James A. Scott, Nina Decosta, Harvey Felton, Catherine Rooney, Louise Covotta, Van Buren Sharpe, Gary Stein, Henry Johnson, Arthur Williams, Jr., Robert Jones, Barbara Seese, Carmella Viscuse, Marie Romanelli and Committee for Full Employment, on behalf of themselves and all others similarly situated

v.

Maurice ABRAMS, Chairman of Pennsylvania Unemployment Compensation Board of Review, James Breslin, Member of Pennsylvania Unemployment Compensation Board of Review, Joseph McAneny, Member of Pennsylvania Unemployment Compensation Board of Review, Ann Reeser, Secretary of Pennsylvania Unemployment Compensation Board of Review, Paul Smith, Secretary of Pennsylvania Department of Labor and Industry, John Clark, Executive Director of Bureau of Employment Security, F. Ray Marshall, Secretary of United States Department of Labor, and William H. Kolberg, Assistant Secretary for Employment and Training, United States Department of Labor, Employment and Training Administration.

Linda HOWER, Perry Mickey, Mary Duvall and Blanche Francis, on behalf of themselves and all others similarly situated

v.

Paul SMITH, Secretary of Pennsylvania Department of Labor and Industry, John Clark, Executive Director of Bureau of Employment Security, Maurice Abrams, Chairman of Pennsylvania Unemployment Compensation Board of Review, James Breslin, Member of Pennsylvania Unemployment Compensation Board of Review, Joseph McAneny,

---

Member of Pennsylvania Unemployment Compensation Board of Review, Robert B. Lutz, Supervisor of Unemployment Compensation Referees, F. Ray Marshall, Secretary of United States Department of Labor, and William H. Kolberg, Assistant Secretary for Employment and Training, United States Department of Labor, Employment and Training Administration.

Civ. A. Nos. 76–1932, 76–2063.

United States District Court,
E. D. Pennsylvania.

July 6, 1979.

William L. Botts, III, Lancaster, Pa., H. David Kraut, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, U. S. Atty., Alfred A. Gollatz, Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court are: (1) the motions of the plaintiffs in Civil Action No. 76–1932 ("Wilkinson plaintiffs") for summary judgment; (2) the motions of the plaintiffs in Civil Action No. 76–2063 ("Hower plaintiffs") for summary judgment; and, (3) the motions of the federal defendants [1] for summary judgment. For the reasons stated below, the motions of the federal defendants will be granted and the motions of the Wilkinson plaintiffs and the Hower plaintiffs will be denied.[2]

---

1. The federal defendants are F. Ray Marshall, Secretary of Labor, and William H. Kolberg, Assistant Secretary for Employment and Training, United States Department of Labor.

2. The Hower case was designated a class action by Order of this Court on November 1, 1976, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2). The Hower class consists of those individuals who have now, or might in the

The scheme for the distribution of unemployment compensation to eligible persons was established by Title III and X of the Social Security Act of 1935, as amended by the Employment Security Amendments of 1970. *See* 42 U.S.C. §§ 501–504. The Social Security Act provides that federal funds shall be made available to the states to assist in the administration of their unemployment compensation laws.

The Act provides that the Secretary of Labor shall not certify disbursements to any state unless he finds that the laws of such state "are reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). Furthermore, such laws must provide for an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." *Id.*, at § 503(a)(3). Exercising the discretion vested in him by the Act, the Secretary promulgated regulations concerning the appeals process mandated by § 503(a)(3), and it is these regulations that the plaintiffs attack.[3] The Hower plaintiffs challenge the regulations promulgated by the Secretary dealing with the promptness with which states must process first-level administrative appeals from preliminary determinations of ineligibility by the Bureau of Employment Security, or its local equivalent. The Wilkinson plaintiffs challenge the regulations promulgated by the Secretary dealing with the promptness with which states must process second-level administrative appeals from determinations of ineligibility.[4]

The regulations are found at 20 C.F.R., Part 650, and were originally promulgated in response to the overriding concern of the Supreme Court in *California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), with the delay in the payment of compensation to eligible persons, including delays caused by the determination process itself. 20 C.F.R. § 650.1(a). It is expressly noted in the regulations that the Act requires the state law to include provision for methods of administration as "are found by the Secretary . . . to be *reasonably calculated* to insure payment when due" (emphasis added) and that the Act further mandates an appeals process. *Id.*, at 650.2(a), (b). Furthermore, the Act provides that the Secretary may stop the payment of funds if he finds a "failure to *comply substantially* with the above stated requirements" (emphasis added). 42 U.S.C. § 503(b)(2); 20 C.F.R. § 650.2(c).

With this statutory mandate as a basis,[5] the regulations provide that state law must include provision for "such methods of administration of the appeals process as will reasonably assure hearing and decision with

---

future, request first-level administrative appeals (referee hearings) under the Pennsylvania Unemployment Compensation Act, 43 P.S. § 822. By Order of this Court on November 9, 1976, and pursuant to Fed.R.Civ.P. 23(a), (b)(2) and (c)(4)(B), the Wilkinson case was designated a class action. The Wilkinson case consists of those individuals who have now, or might in the future, take an appeal from an unfavorable decision at the first administrative appeals level to the second administrative appeals level.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 1361, and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs.

4. By Order of this Court dated April 25, 1977, and pursuant to Fed.R.Civ.P. 23, the stipulation for dismissal entered into between the Hower plaintiffs, the Wilkinson plaintiffs and the state defendants was approved. The claims of the plaintiffs, and the classes they represent, were dismissed with prejudice as against the state defendants. By Order of this Court dated December 28, 1978, this Court denied the federal defendants' motion to dismiss, made pursuant to Fed.R.Civ.P. 12(b)(6).

5. Item 3 of the preamble to the publication in the Federal Register of the revisions to the appeals promptness criteria provides, in part, as follows:

The requirement of the standard is one of substantial compliance with the promptness criteria stated therein. When a State fails to meet the promptness criteria a determination must be made as to whether the State nonetheless had demonstrated the requisite substantial compliance. Such a determination requires an inquiry into the circumstances that have prevented the State from meeting the specified criteria.

20 C.F.R. § 650.

the greatest promptness that is *administratively feasible.*" *Id.*, at 650.3(a)(2) (emphasis added). In addition, it is stated that the Secretary construes the Act to require states to "comply substantially" with the "administratively feasible" promptness criteria. *Id.*, at 650.3(b).

Providing some guidance as to the parameters of "administrative feasibility," the Secretary established specific promptness criteria for first-level appeals as follows:

> A State will be deemed to comply substantially with the State law requirements set forth in § 650.3(a) with respect to first level appeals, if for the calendar year 1975 and ensuing years, the State has issued at least 60 percent of all first level benefit appeal decisions within 30 days of the date of appeal, and at least 80 percent of all first level benefit appeal decisions within 45 days.

*Id.*, at 650.4(b). It is the percentage-promptness criteria which forms the basis for the instant dispute. The Hower plaintiffs contend that the regulations do not comply with the statutory mandate and are violative of constitutional due process and equal protection in that they only require the issuance of 80% of all decisions on first-level appeals within a certain time period and do not establish promptness criteria for the remaining 20% of the decisions. The Wilkinson plaintiffs contend that the regulations do not comply with the statutory mandate and are violative of the Constitution in that they do not establish any percentage-promptness criteria whatsoever for second-level decisions.

## I.  FIRST–LEVEL APPEALS

■ We note at the outset that duly-promulgated regulations are entitled to a facial presumption of validity, *Flemming v. Nestor,* 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), and that the Court can only determine whether there is a rational basis, in light of the statutory mandate, for the Secretary's resolution of the various competing interests. It is clear that the statutory standard requiring the Secretary to assure himself that the state procedures be "reasonably calculated to insure . . . payment when due" does not require 100% compliance with any standard, but only requires the greatest promptness that is "administratively feasible." *California Department of Human Resources v. Java, supra,* 402 U.S. at 131, 91 S.Ct. at 1354. Similarly, the Act vests the Secretary with certain discretion since it states that the Secretary may cut off funds when a state fails to comply "substantially" with this "administratively feasible" criterion. 42 U.S.C. § 503(b)(2).

■ The Hower plaintiffs contend that the regulations require decisions in 80% of all cases within 45 days but would permit the state to indefinitely delay the remaining 20%. We disagree. The state would nonetheless be subject to the requirement that appeals be processed with the greatest promptness that is "administratively feasible." If a state failed to "substantially comply" with this requirement, it would be subject to the loss of federal funds. *Id.*, at § 503(b); 20 C.F.R. § 650.3(a). Rather than constituting a hard-and-fast criterion which vests the state with a right to federal funds if it is met, the percentage-promptness criteria should be viewed simply as guidelines established for the convenience of the various states in the interest of predictability and continuity. The affidavits and exhibits submitted convince the Court that there is a rational basis for the regulations, particularly in light of the complex and difficult task facing the Secretary of supervising simultaneously the programs of the various states. Similarly, the Court finds that the Hower plaintiffs' constitutional claims are without merit, because we find that the percentage-promptness criteria are reasonable in view of the various competing interests. Accordingly, this Court will deny the Hower plaintiffs' motion for summary judgment and will grant the federal defendants' motion for summary judgment, as it applies to first-level appeals.

## II.  SECOND–LEVEL APPEALS

The Wilkinson plaintiffs contend that the lack of percentage-promptness criteria for

the processing of second-level appeals violates the Secretary's statutory mandate and their constitutional rights to due process and equal protection. Once again, at the outset, the Court notes that the Act vests the Secretary with considerable discretion in permitting him to determine whether a state has met the promptness standards. We also note that the Act requires a state to provide "*an* opportunity" for review and that a second level of appeal is not required.[6] Nonetheless, the Court agrees with the Wilkinson plaintiffs that the "when due" requirement of the Act applies to second-level appeals. 42 U.S.C. § 503(a)(1). Accordingly, the Secretary requires the state law to provide for such methods of administration of second-level appeals "as will reasonably assure hearing and decision with the greatest promptness that is administratively feasible." 20 C.F.R. §§ 650.1(d), 650.3(a)(2).

■ This Court needs only to decide whether this standard is sufficient to comply with the Act's "when due" requirement or whether percentage-promptness criteria are required. We find that the regulations do comply with the Act and that there is a rational basis for the lack of percentage-promptness criteria and place emphasis on several factors. First, the Court discerns nothing in the Act which mandates the establishment of percentage-promptness criteria. Second, as is made clear by the federal defendants affidavits, there are several modes of appeal provided for by the various states and no single set of criteria could adequately provide for substantial interstate variation. Third, if percentage-promptness criteria were developed by the Secretary, it is likely that some states would abolish the second-level appeals process rather than face the prospect of losing all federal funding for their compensation programs. Fourth, we find that the percentage-promptness criteria promulgated in

the context of first-level appeals are mere guidelines for the primary benefit of the states and would not go far in the context of second-level appeals in furthering the goals of continuity and predictability in light of the interstate variation. Accordingly, the Court will deny the Wilkinson plaintiffs' motions for summary judgment and grant the federal defendants' motion for summary judgment, as it applies to second-level appeals.

---

**6.** The decision to provide a claimant with a second-level administrative appeal lies within each state's discretion. Presently, only three states do not provide for second-level appeals; namely, Hawaii, Nebraska and New Hampshire. In Ohio, a claimant may be denied access to a second-level hearing without receiving any reason for the rejection. The remaining 46 states have mandatory second-level administrative appeals. (*See* ¶ 9 of the Edwards Affidavit.)